IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA


SHARON BARKER,             )
                             )
         Plaintiff,      )
                             )
v.                      )     Case No. CIV-08-1118-M
                             )
MICHAEL J. ASTRUE,    )
Commissioner of the Social   )
Security Administration,     )
                             )
         Defendant.   )


## REPORT AND RECOMMENDATION

Plaintiff Sharon Barker seeks judicial review of a denial of benefits by the Social Security Administration ("SSA") and remand to a different administrative law judge.  The Court should reverse and remand for further proceedings.  However, the Court should decline to require consideration by a different administrative law judge.

## BACKGROUND

Ms. Barker applied for insurance benefits based on an alleged disability. Administrative Record at pp. 70-72 (certified Dec. 17, 2008) ("Rec.").[1]  The SSA denied the

---

[1]    Ms. Barker also applied for supplemental security income, but the current appeal involves only the claim for insurance benefits. *See* Rec. at pp. 73-75 (application for supplemental security income); Plaintiff's Opening Brief at p. 1 (Mar. 19, 2009) ("Plaintiff's Opening Brief") ("This case is an appeal from a final decision by the Commissioner of the Social Security Administration denying Disability Insurance Benefits ('DIB') under Title II of the Social Security Act brought pursuant to 42 U.S.C. § 405(g).").

application,[2] and the present action followed with claims involving error in the consideration of evidence involving a mental impairment and asthma.[3]

## STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In this circuit, the SSA must follow specific rules when weighing the evidence, and departure from these rules constitutes reversible error. *See Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).[4]

## THE PLAINTIFF'S MENTAL IMPAIRMENTS

Dona Roush, Ph.D. was a licensed therapist who provided mental health counseling to Ms. Barker beginning in June 2002. *See* Rec. at pp. 499-586, 665-95, 754-55, 800-804. The Plaintiff alleges error in the administrative law judge's analysis of opinions noted by Dr. Roush in March 2007. There Dr. Roush had assessed Ms. Barker's mental limitations since the beginning of her therapy sessions. *Id.* at pp. 665-67, 802-803. According to Ms. Barker,

---

[2]      Rec. at pp. 4-7, 13-21, 23.

[3]      Ms. Barker also alleges an erroneous credibility analysis. But the Court need not consider this argument in light of the suggested reversal on other grounds. *See infra* pp. 2-19; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand.").

[4]      There the court stated: "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (citations omitted).

the judge lacked evidentiary support for her rationale and failed to discuss all of the relevant

factors.  The undersigned agrees with the first argument and disagrees with the second.

I.      The Administrative Law Judge's Assessment of the Plaintiff's Mental Condition and
        Functional Abilities

At step two, the administrative law judge concluded that Ms. Barker had not suffered

from severe mental impairments.  *Id.* at pp. 15, 19.  At step four, the judge concluded that the

Plaintiff had retained the residual functional capacity ("RFC") to perform the full range of

light work without any mental limitations.  *Id.* at p. 16.

II.     Dr. Roush's Assessment of Ms. Barker's Mental Condition

In March 2007, Dr. Roush evaluated the effect of Ms. Barker's mental limitations on

her ability to perform various work-related functions.

For example, in appraising Ms. Barker's ability to perform unskilled work, Dr. Roush

found that the Plaintiff was "[s]eriously limited, but not precluded" in her abilities to:

- accept instructions and respond appropriately to criticism from supervisors and

- deal with normal work stress.

*Id.* at p. 665.  The doctor also concluded that the Plaintiff was "[u]nable to meet competitive

standards" in her abilities to:

- maintain regular attendance and be punctual within customary, usually strict
  tolerances and

- perform at a consistent pace without an unreasonable number and length of
  rest periods.

*Id.* Finally, Dr. Roush found that Ms. Barker had "[n]o useful ability" to complete a normal

workday and workweek without interruptions from psychologically based symptoms. *Id.*

When assessing the mental abilities and aptitudes required for semi-skilled and skilled

work, Dr. Roush found that the Plaintiff:

- was "[s]eriously limited, but not precluded" in her ability to understand, remember, and carry out detailed instructions and set realistic goals and

- had "[n]o useful ability" to deal with stress.

*Id.* at p. 667.

In evaluating aptitudes required for particular types of jobs, Dr. Roush stated that Ms.

Barker was "[u]nable to meet competitive standards" for:

- traveling in unfamiliar places and

- use of public transportation.

*Id.*

Finally, Dr. Roush predicted that the Plaintiff's mental limitations would cause her

to miss work more than four days per month. *Id.*

III.    The Required Process for Evaluation of a Treating Source's Opinion

An administrative law judge must follow a specific process in the assessment of  a

treating source's opinion.  First, the judge must determine whether the opinion qualifies for

controlling weight.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per

curiam*).  This evaluation entails a determination of whether the opinion is  "'well- supported

by  medically  acceptable  clinical  and  laboratory  diagnostic  techniques.'"   *Id.* (citation

omitted).  If not, the judge can decline to give controlling weight to the opinion.  *See id.*  At

that point, the administrative law judge must weigh the evidence based on various factors and

"give good reasons" for the impact assigned to the opinion.  *Id.*; *see infra* p. 14.  If the judge

completely rejects the opinions, she must give "'specific, legitimate reasons.'"  *Robinson v.

Barnhart*, 366 F.3d at 1082 (citation omitted).

IV.     The Administrative Law Judge Erred in Her Treatment of Dr. Roush's 2007 Opinions

        Ms. Barker claims that the administrative law judge had discounted Dr. Roush's 2007

opinions on illegitimate grounds and failed to discuss all the regulatory factors.  The first

argument is correct, but the second contention is incorrect.

        A.      The Administrative Law Judge's Rationale for Assignment of "Limited Value"
                to Dr. Roush's 2007 Opinions

        The administrative law judge accorded "limited value" to Dr. Roush's assessment in

March 2007 on grounds that the evaluation:

   •    had been authored after the end of the relevant time-period and

   •    was inconsistent with her progress notes from June 2002 to November 16,
        2006.

Rec. at pp. 17-19.[5]  The two rationales are deficient as a matter of law.

_____

[5]     The administrative law judge also stated that Dr. Roush's treatment notes from June 13,
2002, to September 19, 2005, were "of limited value in determining the claimant's functional
abilities." Rec. at pp. 18-19. For this conclusion, the judge reasoned that the notes had referred only
to Ms. Barker's "statements regarding her immediate condition, with no reference to positive
findings upon mental status examination."  *Id.*  The Court need not decide whether the
administrative law judge was correct in her analysis of the treatment notes from June 13, 2002, to
September 19, 2005.  As discussed in the text, the Plaintiff has challenged the judge's rationale for
discounting the opinions in the March 2007 assessment rather than in the treatment notes from 2002
to 2005.  *See supra* p. 5.

5

<u>The Timing of Dr. Roush's Assessment</u>

In rejecting the March 2007 assessment, the administrative law judge stated that it had "address[ed]" the period before the alleged onset date or after the date last insured.  *Id.* at pp. 17-18 (citing exhibits, including "8F," which is Dr. Roush's mental health assessment in March 2007).   The administrative law judge appeared to assume that Dr. Roush was assessing Ms. Barker's condition after December 31, 2002, because the report had been authored in March 2007.   But this rationale appears to be based on a misreading of Dr. Roush's assessment.  In the document, Dr. Roush stated that her opinions were "IN EFFECT . . . FROM 6-13-02 TO . . . 3-14-07."   *Id.* at p. 665.   And in the hearing, Dr. Roush unambiguously testified that all of the opinions in the form involved mental limitations that had existed in June 2002, when the treatment began:

> Q.      The opinions that you express in Exhibit 8-F [Rec. at pp. 665-67], Dr. Roush, did those exist in June of 20002 [sic]?
>
> A.      Yes, they did.
>
> Q.      And have they continued since that time?
>
> A.      Yes, they have continued.

*Id.* at pp. 802-803.

In light of the language on the form and Dr. Roush's testimony, the administrative law judge had no evidence to support her rationale based on the time-period for the opinions. The judge apparently believed that Dr. Roush was addressing conditions that had begun after December 31, 2002, the date last insured.  *See supra* p. 6.  But in the form and at the hearing,

6

Dr. Roush stated that her assessment had covered a period beginning in June 2002.  *See supra* p. 6.  As a result, the judge had no evidentiary support for this part of her rationale.

The Perceived Inconsistencies with Dr. Roush's Treatment Notes

As noted above, the administrative law judge also relied on an apparent inconsistency between Dr. Roush's treatment notes and the March 2007 assessment.  *See supra* p. 5.  The judge's analysis had two parts.

First, the judge asserted:  "The treatment notes for June through December 2002 do not establish a severe impairment."  Rec. at p. 19.  For this statement, the judge did not identify any of the treatment notes or their contents from June 2002 to December 2002.  Indeed, in the decision, the administrative law judge never even referred to Dr. Roush's treatment notes in 2002.  *See id.* at pp. 13-20.

Second, in discounting the mental impairments, the administrative law judge pointed to five progress notes recorded by Dr. Roush in 2005 and 2006:

- an October 13, 2005 notation that Ms. Barker appeared "more calm;"[6]

- an October 28, 2005 notation that the Plaintiff reported being happier and feeling good;[7]

- an August 22, 2006 record in which Ms. Barker described her functioning as "much better;"[8]

---

[6]   Rec. at p. 690.

[7]   Rec. at p. 689.

[8]   Rec. at p. 674.

- a September 11, 2006 record in which the Plaintiff reported improvement in her condition and less anxiety;[9] and

- a November 16, 2006 notation that Ms. Barker reported that things were "going OK."[10]

Rec. at p. 19. The judge's reliance on the five progress notes in 2005 and 2006 was unsupportable when the record is viewed as a whole.

Although the administrative law judge must weigh the evidence, her balancing here appears to be selective. Elsewhere the administrative law judge regarded the evidence to be "of limited value" because it had addressed the period after expiration of Ms. Barker's insurance.[11] Rec. at pp. 17-18. While minimizing such evidence, the judge relied on five entries over two years and nine months after the expiration of Ms. Barker's insurance coverage.

In relying on the five entries in 2005 and 2006, the judge apparently assumed that the improvement had manifested itself years earlier, during the relevant period. But the judge did not refer to any notes from treatment prior to the end of the Plaintiff's insurance

---

[9]     Rec. at p. 672.

[10]     Rec. at p. 671. The administrative law judge stated that the notation had been made on November 6, 2006. *Id.* at p. 19. But the notation had actually been made on November 16, 2006. *See id.* at p. 671.

[11]     The Plaintiff's insurance coverage ended on December 31, 2002. *See* Rec. at p. 13. Thus, Ms. Barker had to prove a disability on or before that date. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (*per curiam*) (to qualify for disability insurance benefits, the claimant must have had a disability "prior to the expiration of her insured status" (citation omitted)).

coverage. *See supra* p. 7.  Indeed, before the insurance coverage ended, Dr. Roush had noted

that Ms. Barker:

- experienced "extreme" fears of a heart attack and death,[12]

- was "down & out emotionally,"[13]

- was feeling "edgy" and irritable,[14]

- was "in a real tense mode,[15] and

- had "unresolved grief."[16]

Even within the 2005-2006 period, the administrative law judge's reliance on the five

entries was unsupportable.

As noted above, the administrative law judge relied in part on two progress notes on

October 13 and 28, 2005, reflecting improvement in Ms. Barker's anxiety and happiness.

Rec. at p. 19; *see supra* pp. 7-8.  But in Ms. Barker's next four appointments, Dr. Roush

assessed no change, regression in Ms. Barker's condition, improvement, and continued

regression.  Rec. at pp. 685-88.  When viewed in context, the notes on October 13 and 28,

2005, could only be fairly read to indicate fluctuation in Ms. Barker's mental condition.

---

[12]     Rec. at pp. 569, 585 (June 13, 2002 & Sept. 20, 2002).

[13]     Rec. at p. 558 (Nov. 7, 2002).

[14]     Rec. at p. 554 (Nov. 25, 2002).

[15]     Rec. at p. 551 (Dec. 11, 2002).

[16]     Rec. at p. 551 (Dec. 11, 2002).

The judge also pointed to the progress note on August 22, 2006, based on the reference to Ms. Barker's functioning as "much better." Rec. at p. 19; *see supra* pp. 7-8. This reference is also taken out of context. At the appointment on August 22, 2006, Dr. Roush said that Ms. Barker had "[r]egressed last night" and had "[s]omewhat improved today." Rec. at p. 674. The psychologist explained that Ms. Barker "[c]ould not come to [the] appt. last night because she [had been] unable to leave her house - too anxious." *Id*. In comparison to the previous night, Ms. Barker appeared "much better" during her appointment the following day. *Id*. Even with this improvement from the prior night, Dr. Roush noted symptoms involving insomnia, racing thoughts, sadness or discouragement, difficulty functioning, and unreasonable fears. *Id*. Despite the myriad of problems noted during this appointment, the administrative law judge relied on the progress note only for its reference to Ms. Barker's condition as "much better." *Id*. at p. 19; *see supra* pp. 7-8. The judge's interpretation of the progress note on August 22, 2006, is unsupportable when the document is viewed in context. The document can only be fairly read to indicate fluctuation in the Plaintiff's mental condition over a 24-hour period.

The administrative law judge also relied on the progress note of September 11, 2006, solely for the statement that Ms. Barker's anxiety had lessened. Rec. at p. 19; *see supra* pp. 7-8. However, Dr. Roush had assessed regression in Ms. Barker's condition in three of her four previous appointments. Rec. at pp. 673-76. When viewed against the backdrop of

the four previous sessions, the progress note on September 11, 2006, could only be read to reflect fluctuation in Ms. Barker's mental condition.

Finally, the administrative law judge relied on a notation for a session on November 16, 2006, when Ms. Barker had reported that things were "going OK." *Id.* at p. 19; *see supra* pp. 7-8. Only two months and a week later, however, Dr. Roush stated that:

- Ms. Barker's "health ha[d] worsened" and

- she was experiencing "[s]evere anxiety; chronic depression; excessive worry about her health - worries she is having a heart attack."

Rec. at pp. 668-69. Thus, when viewed in context, the progress note on November 16, 2006, would suggest fluctuation rather than stability in Ms. Barker's mental condition.

Three conclusions could be reached based on Dr. Roush's progress notes. Examination of the records cited by the administrative law judge could lead one to conclude that Ms. Barker's anxiety and depression had not played a negative role on her mental health. Consideration of the remaining progress notes could result in a contrary conclusion. But if the administrative law judge had considered all of the evidence, she would have been compelled to find fluctuation in the intensity of the Plaintiff's anxiety and depression.

The administrative law judge adopted the first course of action, relying on Dr. Roush's "positive" progress notes years after the date of last insurance, as if those records had reflected the entirety of the Plaintiff's mental health treatment. *See id.* at pp. 18-19. In doing so, the judge simply disregarded numerous records from Dr. Roush which indicated regression in Ms. Barker's mental condition. The only reasonable inference from the

evidence, when read as a whole, is that the Plaintiff's anxiety and depression had fluctuated in intensity.

A similar situation arose in *Oslin v. Barnhart*, 69 Fed. Appx. 942 (10th Cir. July 17, 2003) (unpublished op.).  There a psychiatrist completed a mental RFC form which indicated that the plaintiff was unable to function in a work setting.  *See Oslin v. Barnhart*, 69 Fed. Appx. at 946.  The administrative law judge rejected the opinion as inconsistent with the medical evidence, citing records which showed that the plaintiff had been doing well.  *Id.* The Tenth Circuit Court of Appeals rejected this rationale, stating:

> Contrary to the [administrative law judge's] findings, the totality of the [evidence] do[es] not conclusively establish that [the plaintiff] always does well and has no problems.  Rather, the progress notes suggest he experienced changing symptoms and no sustained periods of improved functioning.  The [administrative law judge], however, did not address or explain his rejection of this evidence.  Nor does he assess whether [the plaintiff's] changing symptoms permit him to perform work on a regular, consistent, or sustained basis.
>
> . . . .
>
> . . .  Because the [administrative law judge's] discussion of the mental impairment evidence does not . . . fully discuss the mental progress notes, it is unclear whether the [administrative law judge] considered or rejected this evidence, favorable to [the plaintiff].

*Id.* at 946-47.

*Oslin v. Barnhart* is persuasive in light of the similarity in facts.  *See* Tenth Cir. R. 32.1(A).  As discussed above, the administrative law judge failed to discuss the records reflecting adverse effects from the Plaintiff's mental condition.  *See* Rec. at pp. 13-20; *see*

12

*also supra* pp. 7-12.  Viewed as a whole, the record indicates fluctuation in Ms. Barker's mental status.  The judge ignored the obvious fluctuation by disregarding the progress notes that showed the ill effects of Ms. Barker's anxiety and depression.  This sort of selectivity led to reversal in *Oslin*, and the same outcome is appropriate here.[17]

---

[17]    Ms. Barker also alleges a failure to discuss Dr. Roush's comments that the Plaintiff:

- had a husband with Alzheimer's disease,

- was not abusing the system,

- had obtained a recommendation for extensive mental health treatment,

- had experienced unresolved grief over her mother's death,

- noted unpleasant childhood memories regarding her parents,

- had been raped by her former husband,

- had difficulty speaking in a group,

- had engaged in an emotional outburst toward her son,

- felt inferior to her siblings,

- had experienced a difficult and tense home life,

- engaged in self-induced vomiting,

- suffered from extreme fatigue, and

- had a "Global Assessment Functioning" score of 50 in January 2007.

The Court need not consider the alleged failure to discuss these evidentiary items.  *See supra* note 3.

B.     The Administrative Law Judge's Consideration of the Regulatory Factors

The judge had to consider various factors when evaluating Dr. Roush's opinions.  *See*

20 C.F.R. § 404.1527(d).  These factors include:

- the length of the treatment and the frequency of examination;

- the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

- the extent of the record support for the therapist's opinions;

- the consistency between the opinions and the record as a whole;

- a specialization in the subject-matter; and

- the existence of other factors brought to the administrative law judge's attention which tend to support or contradict the opinions.

*See id.*

According to Ms. Barker, the judge failed to discuss the frequency of Dr. Roush's

treatment and her specialization in mental health.  The Court should reject these arguments

for two reasons.

First, the Tenth Circuit Court of Appeals has held that the administrative law judge

need not discuss all of the regulatory factors.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007).  As a result, the alleged omissions would not be fatal.

Second, the administrative law judge did consider the frequency of treatment and Dr.

Roush's area of specialty.  Rec. at p. 18 (noting that Ms. Barker had "received supportive

therapy from a psychologist from June 13, 2002, through September 19, 2005").

For both reasons, the Plaintiff's argument is invalid.

V.     The Administrative Law Judge's Consideration of the Mental Impairments at Step Two

At step two, the administrative law judge concluded that the Plaintiff had severe impairments involving obesity and high blood pressure. *Id.* at p. 15. But the judge did not regard the depression, anxiety, agoraphobia, or panic disorder as a severe impairment prior to the expiration of Ms. Barker's insured status. *Id.*; *see supra* p. 3. Ms. Barker challenges the step two assessment of the mental conditions, relying on Dr. Roush's opinions. As stated, the judge erred in her analysis of Dr. Roush's opinions. *See supra* pp. 3-13. But any error at step two would have been harmless because the administrative law judge had regarded the obesity and high blood pressure as severe and she proceeded to step three.[18]

VI.    Summary

The administrative law judge provided invalid reasons for rejecting Dr. Roush's opinions. But any error at step two would have been harmless.

THE FAILURE TO CONSIDER EVIDENCE OF ASTHMA

Ms. Barker contends that the administrative law judge had erroneously failed to discuss her asthma. The Plaintiff is correct.

---

[18]    *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (noting that any error at step two became harmless when the administrative law judge had "reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence").

As alleged by Ms. Barker, the record contained multiple references to her asthma, including diagnoses of the condition, records reflecting asthmatic symptoms, and treatment for the disease.[19]  Based on this evidence, the administrative law judge had to consider the effect of the asthma.

The social security regulations state:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523.

At step two, the judge found severe impairments involving obesity and high blood pressure.  Rec. at p. 15; *see supra* p. 15.  But the judge never mentioned the asthma or discussed whether she had considered it as a severe impairment.  *See* Rec. at p. 15.  Even if the judge had concluded that the asthma was not severe, she was still required to consider the

---

[19]     Rec. at p. 184 (diagnosis of asthma); *id.* at p. 250 (notations reflecting Ms. Barker's history of asthma, complaints of breathing problems, and chest pressure); *id.* at p. 251 (discussion of treatment options and medications for asthma); *id.* at p. 252 (diagnosis of "[a]dult onset bronchial asthma"); *id.* at p. 264 (notation of "[p]ersistent asthma"); *id.* at p. 266 (notations of asthma, related medications, and complaints involving shortness of breath and tightness in the chest); *id.* at p. 295 (doctor's visit to address concerns associated with asthma); *id.* at p. 440 (notation involving shortness of breath, which was attributed to asthma); *id.* at p. 446 (notation of asthmatic history).

effect of the condition in combination with the obesity and high blood pressure. *See infra* pp. 18-19.

The Defendant argues that "the evidence did not require the [administrative law judge] to find that Plaintiff had severe asthma at step two." Brief in Support of the Commissioner's Decision at p. 10 (May 18, 2009) (citation omitted). In support, the Defendant points to an examination in which Dr. Kipperman reported that the respiratory system was "[c]lear to percussion and auscultation." Rec. at p. 444; *see* Brief in Support of the Commissioner's Decision at p. 10 (May 18, 2009).

The Defendant's medical opinion does not substitute for an assessment by the administrative law judge after consideration of the record. The Defendant does not appear to question the fact that the Plaintiff suffered from asthma. Indeed, on the same document containing the reference to clear "percussion and auscultation," the physician noted shortness of breath during Ms. Barker's asthma attacks. Rec. at p. 444.

The Defendant appears to assume that clear percussion and auscultation would prevent any decision-maker from regarding the asthma as severe. This assumption lacks any support in the record, as no medical expert discussed the significance of Dr. Kipperman's reference to clear percussion and auscultation. Indeed, one medical text noted that auscultation provides little help in the assessment of an asthmatic condition: "Auscultation of the chest is of limited value since patients with severe disease are unable to shift enough air to produce rhonichi, the so-called 'bilateral silent chest.'" *Asthma: Basic Mechanisms and Clinical*

17

*Management* 821-22 (3d ed. edited by Peter Barnes, Ian Rodger, Neil Thomson 1988).  And another medical text noted the limitations of auscultation in the detection of asthmatic wheezing:

> The patient with asthma may present with wheezing, coughing, shortness of breath, tightness of the chest, or complaints of chest "congestion." Asthma is often associated with poor exercise tolerance, recurrent chest colds, recurrent or chronic bronchitis or recurrent pneumonia.  Patients may present with many of these symptoms even though wheezing cannot be detected on auscultation. (Careful examination will, however, elicit wheezing if the patient performs a forced expiratory maneuver, particularly in the supine position.)

Richard F. Lockey, M.D. & Samuel C. Bukantz, M.D., *Principles of Immunology and Allergy* 8 (1987).

The issues before the administrative law judge were: (1) whether the Plaintiff had asthma; and (2) whether the asthma would have affected the RFC.  The Defendant appears to assume that these inquiries would be mooted by a finding that the asthma was not severe. This assumption is misguided, and the administrative law judge would have had to consider the asthmatic condition at step four even if it would not have constituted a severe impairment when viewed in isolation.  *See Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1212 (D. Kan. 2003) ("it would . . . materially affect Plaintiff's RFC if he truly experiences shortness of breath upon exertion").  As the SSA has explained:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be

> critical to the outcome of a claim.  For example, in combination with
> limitations imposed by an individual's other impairments, the limitations due
> to such a "not severe" impairment may prevent an individual from performing
> past relevant work or may narrow the range of other work that the individual
> may still be able to do.[20]

Thus, even if the asthmatic condition were not severe in itself, the administrative law judge

would have had to consider how the related conditions affected the RFC.

The record does contain evidence of functional limitations from the asthma.  For

example, in one hospital visit, Ms. Barker complained of "constant shortness of breath and

tightness in her chest."  Rec. at p. 266; *see supra* p. 16.  But in her written decision, the

administrative law judge did not comment on the diagnoses of asthma or the related

complaints involving shortness of breath.  *See supra* p. 16.

Perhaps the administrative law judge did not credit the breathing complaints by Ms.

Barker, as the Defendant appears to assume.  But the judge might also have overlooked the

diagnoses of asthma and the respiratory complaints.  Either way, the Court cannot evaluate

the administrative law judge's omission of the asthmatic symptoms because of her silence

on the subject.  The judge's silence on the evidence of asthma and breathing complaints

constitutes  reversible error.[21]

---

[20]    Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, Westlaw op. at 5 (July 2, 1996).

[21]    The Western District of Oklahoma explained in similar circumstances:

> As the Defendant argues, the administrative law judge might have been
> justified in discounting the alleged asthma in the RFC assessment.  However, the
> judge did not discuss the asthma in connection with his analysis of the RFC.  Thus,
> the Court can only speculate about whether the administrative law judge had

## THE REQUEST FOR REMAND
## TO A DIFFERENT ADMINISTRATIVE LAW JUDGE

Ms. Barker seeks remand to a different administrative law judge on grounds of bias. The Court should deny the request.

Reassignment to a different administrative law judge is warranted only "'in the most unusual and exceptional circumstances.'" *Miranda v. Barnhart*, 205 Fed. Appx. 638, 644 (10th Cir. Aug. 11, 2005) (unpublished op.) (citation omitted). Such circumstances are absent here.

Ms. Barker alleges:

- The administrative law judge had limited the first hearing to 45 minutes and used a substantial portion of that time to ask the Plaintiff about her work history and travel;

- the judge's questions about the Plaintiff's travels were "of limited relevance and unnecessarily adversarial;"[22]

- following the judge's questions, Ms. Barker "broke down and stated three times that she simply wanted to go home;"[23]

---

overlooked the alleged asthma or discounted its functional limitations, as the Defendant suggests.

*Snyder v. Barnhart*, Case No. CIV-01-1583-M, slip op. at p. 8 (W.D. Okla. Mar. 31, 2003) (citation omitted) (unpublished report and recommendation by magistrate judge), *adopted* (W.D. Okla. Apr. 30, 2003) (unpublished order by district judge); *accord Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that the administrative law judge had erred by failing to explain the decision to discount an asthmatic claimant's testimony regarding problems with coughing).

[22]   Plaintiff's Opening Brief at p. 27 (citation omitted).

[23]   Plaintiff's Opening Brief at p. 28 (citation omitted).

- the judge stopped the first hearing because of missing treatment records even though they were irrelevant; and

- the administrative law judge treated the Plaintiff's attorney "less that courteously."[24]

These allegations do not represent unusual or exceptional circumstances which would warrant reassignment to a different administrative law judge.

First, the judge's questions regarding the Plaintiff's work history and travels were relevant to the disability claim and were not adversarial.[25]

Second, the Plaintiff elsewhere alleged that "uncontrollable crying was a symptom of her mental impairments." Plaintiff's Opening Brief at p. 28. Thus, her "breakdown" following the judge's questions was not necessarily due to antagonistic behavior from the judge. Instead, the outburst could have been caused by her mental impairments.

Third, the judge was entitled to obtain the missing records, even though the Plaintiff believed they were irrelevant based on their timing.[26]

---

[24]    Plaintiff's Opening Brief at p. 29.

[25]    *See* 20 C.F.R. § 404.1560(a) (stating that vocational background will be considered after step three); *Roybal v. Astrue*, 224 Fed. Appx. 843, 848 (10th Cir. May 22, 2007) (unpublished op.) (stating that the administrative law judge had properly relied on the plaintiff's ability to travel as a basis to discount her credibility).

[26]    Although the records were authored after the date last insured, they could have contained evidence that would have favored the Plaintiff. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348 (10th Cir. 1990) (*per curiam*) (a physician may retrospectively diagnose a disease which renders a claimant severely impaired).

21

Finally, the Plaintiff's allegation of discourteous behavior does not warrant remand to a different judge.  Ms. Barker cites the following colloquy between her attorney and the administrative law judge:

JUDGE:            Okay. Now then I find it very strange that we are here having a hearing and we are missing two years of records.

ATTORNEY:        Well, if the doctor doesn't furnish them, Your Honor, I can't furnish them to Your Honor.

JUDGE:            I think you need to do more than write a letter that you send five days after you get a notice of hearing.

ATTORNEY:        What more should I do other than request records, Your Honor? Ask you to subpoena them?

JUDGE:            Mr. Grennan, I'm not going to tell you how to practice law, but I think merely sending a letter isn't sufficient. I'm missing nearly two years of medical records from her treating physician. I asked you earlier if anything needed to be submitted and you said no.

ATTORNEY:        Well, you certainly called it to my attention that apparently there is.  Because I find that I have not received any records, at least I don't see where I received them, and then submitted them to the Hearing Office since my request of June 5, and so I was in error in telling you that undoubtedly if they are not in the file. And as I say I could spend some time going through this voluminous file to exactly what date we have from that doctor.

JUDGE:            I tell you what we are going to do. Mr. Grennan, if you can't keep up with the file I suggest that you learn how to do so. Now then here is what we are going to do. We're going to stop the hearing. You're going to get those records. You're going to send them to me. I'm going to review them, and then we're going to come back

> for a supplemental hearing. You've got 10 days to get me
> those records.

Plaintiff's Opening Brief at pp. 29-30; *see also* Rec. at pp. 785-86.

The exchange concerned the missing records, which the administrative law judge was entitled to examine. *See supra* pp. 22-23. The judge may have expressed displeasure over the missing records and even annoyance at the Plaintiff's attorney. But expressions of displeasure or annoyance do not require reassignment to a different judge. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994) (stating that bias or partiality is not established by "expressions of impatience, dissatisfaction, annoyance, and even anger").

RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The undersigned recommends that the Court:

- reverse and remand and

- decline to require consideration by a different administrative law judge.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1). The deadline for objections is November 10, 2009. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested rulings.[27]

---

[27]    *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 20th day of October, 2009.


_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge